IN THE DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL OPPORTUNITY | : | |
| EMPLOYMENT COMMISSION | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-7485 |
| | : | |
| ROSE CASUAL DINING, L.P., d/b/a | : | |
| APPLEBEE'S NEIGHBORHOOD | : | |
| GRILL & BAR | : | |
| DANIELLE RIELLI | : | |
| | : | |
| v. | : | |
| | : | |
| ROSE CASUAL DINING, L.P., JAMIE | : | |
| RUCKLE, SUSAN PURCELL, STACEY | : | |
| BARTHOLOMEW, DEXTER VOLPE, and | : | |
| BRIAN MARKS | : | |

**Surrick, J.**                                                                                            **March 5, 2004**

**MEMORANDUM & ORDER**

Presently before the Court is Defendants Rose Casual Dining, L.P. d/b/a Applebee's Neighborhood Grill & Bar, Jamie Ruckle, Susan Purcell, Stacey Bartholomew, Dexter Volpe, and Brian Mark's Motion for Summary Judgment. (Doc. No. 27.) For the following reasons, Defendants' Motion for Summary Judgment will be denied.[1]

**I.   Background**[2]

On or about October 25, 2001, Plaintiff Danielle Rielli was hired as a manager-trainee by Defendant Rose Casual Dining, L.P. ("Rose Causal"), at their Bloomsburg, Pennsylvania facility.

---

[1] "Defendants" refers to Rose Casual Dining, L.P., and all individually named defendants. "Defendant" only refers to Rose Casual Dining.

[2] We recite only those allegations in Rielli's Third Party Complaint that are necessary to decide this motion. The Equal Employment Opportunity Commission ("EEOC") also filed a complaint making substantially the same allegations.

(Doc. No. 12 ¶ 10.)  Rielli alleges that almost immediately after she was hired, she was subjected to a sexually hostile work environment by the management and other employees of Rose Casual. (Id. ¶ 11.)  When Rielli complained to the assistant general manager, Susan Purcell, about the sexually hostile work environment at the Bloomsburg facility, she responded that Rielli would have to deal with it.  (Id. ¶ 12.)  When Rielli complained to the general manager, Stacey Bartholomew, she laughed and questioned Rielli's sexual orientation.  (Id. ¶ 13.)

      Determined to become a restaurant manager, Rielli continued to endure the sexual harassment until she finished the kitchen training and transferred to Rose Casual's Audubon facility to begin "front of the house" training.  (Id. ¶ 15.)  On or about November 23, 2001, at the Audubon orientation meeting, Rielli explained the difficulties she encountered at the Bloomsburg facility and that she did not feel fully prepared to be a restaurant manager.  (Id. ¶ 16.)  Rielli promised the general manager, Scott Larsen, that she would do anything to make up for the deficiencies in her training in Bloomsburg and was assured by Larsen that she would be successful.  (Id. ¶ 17.)  On November 27, 2001, Rielli met with the manager and training coordinator, Dexter Volpe, and informed him of the sexual harassment that she endured at the Bloomsburg facility.  (Id. ¶ 18.)  Volpe expressed concern and told Rielli that he was going to refer the matter to the human resources department and make them aware of her allegations. (Id. ¶ 19.)  On November 29, 2001, Rielli met with two human resources employees, Paul Rockelmann and Paul Trzaska, to discuss the sexual harassment Rielli endured at the Bloomsburg facility.  (Id. ¶ 20.)  Trzaska told her that he was aware of complaints at the Bloomsburg facility and that she was not the first one to make such a complaint.  (Id.)

      On December 3, 2001, Rielli attended Rose Casual's holiday party.  (Id. ¶ 23.)  Upon

entering the party, the Bloomsburg manager, Jamie Ruckle, immediately approached Rielli and grabbed her posterior while commenting on how good she looked. Ruckle then removed Rielli's name tag and dropped it down her cleavage. Ruckle continued to pursue Rielli throughout the night, grabbing her and making repeated sexual comments towards her. (Id.) On December 4, 2001, Rielli returned to work and again complained to Volpe about Ruckle's sexually harassing behavior. (Id.¶ 25.) Volpe commented that Ruckle "was doing that to everyone," not just Rielli. (Id. ¶ 26.) Less than three hours later, Rielli was informed that she was being terminated because she did not fit in. (Id. ¶ 27-29.)

Rielli alleges that Defendants subjected her to a sexually hostile work environment and retaliated against her when she complained about the sexual harassment. She seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. § 951, et seq. ("PHRA"), and raises other state law claims.[3]

## II.   Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating that there are no facts supporting the non-moving party's legal position. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-324 (1986). The burden then shifts to the

---

[3] The analysis required for adjudicating Plaintiff's claim under the PHRA is identical to a Title VII inquiry. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999). We therefore need not separately address her claims under the PHRA.

nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "The nonmoving party . . . cannot rely merely upon bare assertions, conclusory allegations or suspicions to support its claim," Townes v. City of Phila., No. Civ. A. 00-CV-138, 2001 WL 503400, *2 (E.D. Pa. May 11, 2001) (quoting Fireman's Ins. Co. v. DeFresne, 676 F.2d 965, 969 (3d Cir. 1982)). Rather, the party opposing summary judgment must go beyond the pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. See Celotex, 477 U.S. at 324. When deciding a motion for summary judgment, the court must construe the evidence and any reasonable inferences therefrom in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A genuine issue of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.

**III.    Discussion**

    **A.    Sexually Hostile Work Environment**

Defendants contend that Plaintiffs cannot meet the standard for establishing a claim for hostile work environment discrimination under Title VII. Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This language is not limited to solely prohibiting discrimination that is "economic" or "tangible." Harris v. Forklift Sys., Inc., 510 U.S. 17, 20 (1993) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (internal quotations omitted)). "When the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris, 510 U.S. at 20 (internal quotations and citations omitted). To establish a prima facie case of hostile work environment, plaintiff must show: (1) the employee suffered intentional discrimination because of his or her sex;[4] (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the employee; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the presence of respondeat superior. Suders v. Easton, 325 F.3d 432, 441 (3d Cir. 2003) (citing Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990).

### 1. Discrimination Must be Pervasive and Regular

To survive a motion for summary judgment, a plaintiff must raise a genuine issue of material fact such that a trier of fact could conclude that the discrimination was pervasive and regular.[5] Andrews, 895 F.2d at 1482. The Third Circuit has held that "[h]arassment is pervasive when 'incidents of harassment occur in concert or with regularity.'" Id. at 1484 (quoting Lopez v.

---

[4] Defendants argue that Plaintiffs cannot make out a prima facie case of "same-sex harassment." Defendants' argument is misguided. Neither Complaint contends that the female managers sexually desired Rielli, but that the managers contributed to the hostile work environment through sexual inference and innuendo. The physical "touching," sexual innuendo, and derogatory comments concerning Rielli's sexual preferences clearly establish that the Plaintiffs have established the first prong of a hostile work environment claim - that "the employee suffered intentional discrimination because of his or her sex." Suders, 325 F.3d at 441.

[5] The Court of Appeals for the Third Circuit has recognized that its formulation of this prong differs from the Supreme Court's, which requires that the harassment be "severe or pervasive." See, e.g., Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 277 n.6 (3d Cir. 2001). As discussed herein, a reasonable jury could conclude from the evidence in this case that Plaintiff suffered harassment that was pervasive, severe, and regular. Any difference in the two formulations is therefore not controlling in our decision on Defendants' Motion.

S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987)).  The Supreme Court has emphasized that the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor, 477 U.S. at 67 (quotation omitted).  Whether an environment is hostile and therefore actionable can be determined only by looking at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.  "[A]llegations of isolated or single incidents of harassment do not constitute a cognizable hostile work environment claim." Saidu-Kamara v. Parkway Corp., 155 F. Supp. 2d 436, 439 (E.D. Pa. 2001) (citing Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997)).

     Defendant claims that no reasonable jury could conclude that Plaintiff experienced pervasive and regular harassment.  Defendant argues that the record in this case is similar to other cases in which the facts have been found insufficient to support a claim of hostile work environment liability.  See Bowman v. Shawnee State Univ., 220 F.3d 456, 463-65 (6th Cir. 2000) (supervisor's rubbing employee's shoulders, grabbing employee's buttocks, and offensive touching not severe enough to create hostile work environment); Adusumilli v. City of Chicago, 164 F.3d 353, 361-62 (7th Cir. 1998) (supervisor's four incidents of unwelcome contact with subordinate's arm, fingers, and buttocks, along with repeated sexual jokes aimed at subordinate, not severe enough to create hostile work environment); Saidu-Kamara, 155 F. Supp. 2d 436 (no liability where events were sporadic, with four incidents occurring over eighteen months); Bonora v. UGI Utilities, No. Civ. A. 99-5539, 2000 WL 1539077, at *3 - *4 (E.D. Pa. Oct. 18,

2000) (supervisor's ten incidents of harassing conduct over two years not frequent enough to create hostile work environment); Cooper- Nicholas v. City of Chester, No. Civ. A. 95-6493, 1997 WL 799443, at *3 (E.D. Pa. Dec. 30, 1997) (supervisor's comments over nineteen months not frequent enough to create hostile work environment); McGraw v. Wyeth-Ayerst Labs. Inc., No. Civ. A. 96-5780, 1997 WL 799437, at *6 (E.D. Pa. Dec. 30, 1997) (supervisor's repeated requests for date, kissing subordinate without her consent, and touching her face not severe enough to create hostile work environment).

      The facts in this case are distinguishable from those in the cases cited by Defendants. Plaintiffs allege numerous specific instances of lewd behavior, extremely vulgar language, propositions to engage in sexual acts, inappropriate physical contact, and comments about Rielli's sexual orientation. There was a significant amount of "bad language" at the facility. (Danielle Rielli's Br. in Opp'n to Def./Third Party Defs.' Mot. For Summ. J. Ex. 2 "Rielli Dep." at 219.) This language included specific references to sex acts, (Id. at 216, 220, 221, 227, 232, 283), and explicit descriptions of sexual organs. (Id. at 227.) Rielli's co-workers would address her specifically with reference to a sexual act. For example, one co-worker told her that she needed to "go home and get a prick in me to loosen myself up." (Id. at 219.) Other times Rielli was asked what kind of sexual acts she engaged in. (Id. at 282.) When Rielli would fail to participate in these lewd discussions, other employees would label Rielli a "lesbian." (Id. at 229, 289, 295.) On another occasion Rielli was invited to participate in a sexual act with one of her managers and his wife. (Id. at 231.) The behavior of Ruckle, a manager at the Bloomsburg facility, was particularly extreme. Ruckle would pat her on her behind, push his body unnecessarily against hers when they passed, and on several occasions removed her name tag

from her chest and stuck it down her shirt.  (Id. at 259, 284-85, 330.)

The alleged behavior in this case is similar to the harassment alleged in Harley v. McCoach, 928 F.Supp. 533 (E.D. Pa. 1996).  In Harley, the court found liability where plaintiff testified:

> The sexually offensive conduct of the workers was constant. Workers were always grabbing each other in offensive ways, tongueing each other's ears, eating danish pastries in ways that simulated oral sex, "humping" each other (one man pressing his pelvis against another man's buttocks to simulate a sexual act), telling sexually oriented jokes, making sexually oriented comments to and about each other, using profanity, openly displaying sexually oriented magazines and a host of other offensive activities....

Id. at 536.[6]  Rielli was employed at the Bloomsburg facility for only approximately four weeks, and during that time there were more than twenty alleged incidents.  Construing the facts in a light most favorable to Plaintiff, the facts would support a finding that the conduct was severe and pervasive.

The harassing conduct directed at Plaintiff in this matter was frequent, and was physically threatening and/or humiliating as opposed to merely offensive.  A man asking a woman what kind of sex acts she engaged in, explicitly constantly describing his sexual proclivities, and frequently touching the woman on the backside and putting things down the front of her shirt on a regular basis may certainly be considered threatening and/or humiliating to that woman.

---

[6]Defendants argue that Harley is instructive as an example of an instance where the court dismissed hostile work environment claims.  928 F.Supp. at 536.  Defendants misstate the holding of the case.  While that court did dismiss the race-based discrimination claims, it held that "[t]he record reflects that a number of the male workers ... engaged in conduct that can charitably described as both vulgar and offensive. ... Considering the evidence in the light most favorable to [plaintiff], we find that a jury could reasonably conclude that the plaintiff was compelled to endure circumstances sufficiently severe as to alter the condition of her employment."  Id. at 539.

Moreover, the harassment to which Plaintiff was subjected interfered with the performance of her job. As a result of the harassment she complained to her managers about the foul and offensive language by some of her co-workers and eventually transferred to another training facility. (Rielli Dep. at 181-82, 219.) We are satisfied that, construing the facts in the light most favorable to Plaintiffs, as we must, a reasonable jury could find that Rielli suffered harassment that was pervasive, severe, and regular.

### 2.     **Respondeat Superior**

Employers are not strictly liable for hostile work environments created by their employees. Meritor, 477 U.S. at 72. Rather, in the context of a hostile work environment claim under Title VII, employers are liable for their employees' sexual harassment only if a plaintiff can prove that management-level employees had actual or constructive knowledge of the existence of the hostile environment and failed to take prompt and adequate remedial action. Andrews, 895 F.2d at 1486 (citing Katz v. Dole, 709 F.2d 251, 255 (4th Cir. 1983)). Adequate remedial action is action "reasonably calculated to prevent further harassment." Knabe v. Boury Corp., 114 F.3d 407, 412-13 (3d Cir. 1997) (quoting Saxton v. AT&T Co., 10 F.3d 526, 535 (7th Cir. 1993)). In other words, an employer is only liable for a hostile work environment under Title VII if the employer is negligent in responding to incidents of sexual harassment. See Bouton v. BMW of N. Am., Inc., 29 F.3d 103, 107 (3d Cir. 1994).

In the instant case management-level employees had *actual notice* of the sexual harassment. On at least three different occasions, Rielli complained to her managers and supervisors about the work environment. Rielli first complained to the General Manager at the Bloomsburg training facility, Bartholomew, about the conduct of Ruckle and Don Moodie.

(Rielli Dep. at 218-19.) Bartholomew's responded that, "[i]t's a restaurant, you'd better get used to it." (Id.) Next, Rielli complained to the Kitchen Manager, Purcell, about another Manager's (Gene Beardsley) invitation to join his wife in a sexual act. (Id. at 230-31.) Purcell took no action and "mocked" Rielli in front of other employees for complaining to her about the incident. (Id. at 233.) Then Rielli complained to the Training Director, Volpe. (Danielle Rielli's Br. In Opp'n to Def./Third Party Defs.' Mot. For Summ. J. Ex. 1 "Volpe Dep." at 147-48.) After hearing Rielli's allegations, Volpe recognized that he needed to "get a hold of human resources." (Id. at 149.) Only a few days after that conversation with Volpe, Rielli was severely harassed by Ruckle at Defendant's employee holiday party. Each of the individuals Rielli spoke to was in a supervisory position and had the ability to take action to correct the problem. In sum, we conclude that a jury question exists as to whether Defendant acted reasonably in responding to Plaintiff's continuing complaints.[7]

**B.   Retaliation Under Title VII**

To sustain a claim of retaliation under Title VII, plaintiff must show that: (1) she engaged in a protected activity;[8] (2) the employer took an adverse employment action against her

---

[7]Defendant argues that it has an affirmative defense because Rielli failed to follow the Defendant's stated sexual harassment policy. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). In Faragher and Ellerth the Supreme Court held that, "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages...." Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807. In this case, Rielli was fired at the Audubon facility on December 4, 2001. This defense is not available. See Suders, 325 F.3d at 452.

[8]Defendants contend that Plaintiff Rielli was not engaged in a "protected activity." Under Section 704(a) of Title VII: "[i]t is an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under." 42 U.S.C. § 2000e-3(a). The record shows that on or about November 27, 2001, and December 3, 2001,

subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the adverse employment action.[9] See Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir. 1994). "Once plaintiff makes out a prima facie case of retaliation, the burden of production then shifts to [defendant] to proffer a legitimate, nondiscriminatory reason for discharging her, at which point the presumption of discrimination arising from the prima facie case drops away, leaving the burden on [plaintiff] to prove that [defendant's] proffered reasons were pretextual." Geraci v. Moody-Tottrup Int'l, Inc., 82 F.3d 578, 580 (3d Cir. 1996) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

Defendant argues that Plaintiffs cannot prove that Defendant's proffered reasons for her termination were pretextual. "A plaintiff may defeat a motion for summary judgment (or judgment as a matter of law) by pointing to 'some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions.'" Jones, 198 F.3d at 413 (citing Fuentes v.

---

Rielli complained about being subjected to sexual harassment. (Pl. EEOC's Br. in Opp'n to Def. Rose Causal Dining L.P.'s Mot. for Summ. J. Ex. 8 "Volpe Dep." at 146-48, 176-77.) Defendants' argument is without merit.

[9]Defendants contend that Plaintiffs cannot show any causal relationship between Rielli's allegations and the ultimate termination. "A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1253 (10th Cir. 2001) (quoting Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir.1982); see also Harley, 928 F.Supp. at 542 ("A plaintiff may satisfy her burden at the prima facie stage by showing that the adverse employment action was close enough in time to the protected activity to give rise to an inference of retaliation.") (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989)). Rielli was terminated less than a day after her last complaint of sexual harassment. (Rielli Dep. at 263-65.) Defendant's argument is without merit.

Perskie, 32 F.3d 759, 764 (3d Cir. 1994); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1067, (3d Cir. 1996) (en banc)).  Plaintiff can satisfy the first Fuentes prong by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997).  To satisfy the second Fuentes prong, the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that [sex] was a motivating or determinative factor in the employment decision. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644-45 (3d Cir. 1998) (citing Keller, 130 F.3d at 1111)).

Defendants argue that as in the case of Thakur v. R.W. Johnson Pharm. Research Inst., Rielli's termination was solely based on her lack of performance.  268 F. Supp. 2d 521 (E.D. Pa. 2003).  In Thakur plaintiff offered three bases upon which a jury could reject defendant's proffered reason for termination and infer discrimination: (1) defendant had not been consistent in stating the reason for plaintiff's termination; (2) there is sufficient evidence of plaintiff's good performance to belie the notion defendant fired him for bad performance; and (3) defendant failed to adhere to its own corporate policies in dealing with him, and that this raises an inference of discrimination. Id. at 530-32.  In dismissing Thakur's claims, the court found that no evidence supported plaintiff's contentions.

In the instant case, Defendant claims that it terminated Rielli solely because of poor performance.  Plaintiffs argue that the facts allow a jury to infer that Defendant's dismissal for poor performance was a pretext.  Plaintiffs argue that when Defendants notified Rielli that she

was being terminated they had not decided on a reason. During the "termination" conversation, Volpe and Marks advised Rielli that she was "cocky," ran her "mouth to everybody about Bloomsburg," she was "behind on her book work," and that she was not a "good fit." (Rielli Dep. at 267-69.) Based upon this a jury could conclude that Defendants were searching for a reason to justify terminating Rielli's employment.

The evidence also supports Plaintiffs' contention that Rielli never knew that she was in danger of being terminated because of her poor performance. During Rielli's employment in the training program she was evaluated three times in weekly "MIT" and "GM" reports. See (Danielle Rielli's Br. in Opp'n to Defs./Third Party Defs.' Mot. for Summ. J. Ex. 12.) For the most part, her evaluations were positive, with Rielli receiving a "successful" rating the majority of the time. On the "GM Weekly Report" for the second week of training, her evaluator stated, "Danielle did a good job with her books. I coached her on her projects. This week I will be observing her leadership skills." (Id. at 4.) Rielli's reviews Nov. 17, 2001, and Dec. 3, 2001, indicated that she was behind on her book work:

> 3. What plans do you have in the coming week for helping the MIT develop those skills needing improvment?
>
> Danielle is very behind on her ... Projects [and] paperwork. She needs to focus on catching up on the paperwork.
> ....
>
> 4. How would you describe the MIT's performance this week during training? Comment on the MIT's progress, efforts to learn standards and procedures, ability to complete projects and written exercises, contributions as one of the team and other expectations.
>
> Really need to see the paperwork done, we are far far behind on many modules and projects. On 11/23 we went over your books and made a to do list of projects and modules. On 12/3 we have done 1 module and completed 2 tests. If you need

> help ask me for it, I will be there to help.

(Id. at 5, 6.)  While these reviews suggest that Rielli was behind on her work, they do not suggest that her termination was imminent.[10]  However, Rielli was terminated the day after the December 3, 2003 report.

Despite Defendant's contentions that Rielli's work product was the sole reason for her dismissal, none of Defendant's employees met with her to discuss the serious nature of the problem.  Before leaving the Bloomsburg facility, Rielli met with the training manager and he never mentioned any problem with her bookwork.  (Rielli Dep. At 202-03.)  When Rielli arrived at the Audubon training facility, in response to her concerns that she was behind, her new manager stated that she was doing "fine."  (Rielli Dep. at 244.)  In fact, no one at the Audubon facility ever talked to her about problems with her performance, (Id. at 204,245), and only on her first day there did any of Defendant's employees discuss with Plaintiff the need to finish up a "module."  (Id. at 208.)  The fact that this bookwork was never discussed with her, and the fact that her performance reviews do not illustrate a more serious problem, is evidence from which a jury could find that Plaintiffs have carried the burden of establishing the first prong of Fuentes.

   C.   **Aider and Abetter Liability Under the PHRA**

In Count V of the Third-Party Complaint, Rielli alleges that "Aider and Abetter" liability exists under the PHRA against the individual Defendants: Ruckle, Purcell, Bartholomew, Volpe, and Marks for sexual harassment and retaliation.  The PHRA expands on the relief available under Title VII by forbidding:

> any person, employer, employment agency, labor organization or employe [sic], to

---

[10]Rielli never saw the "GM Weekly Report" for training week five.  (Rielli Dep. at 204.)

> aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 PA. CONS. STAT. § 955. "[A]n individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision." Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa.1998) (citing Dici v. Commonwealth of Pa., 91 F.3d 542, 552-53 (3d Cir. 1996). In Dici, the Third Circuit considered aider and abetter claims against both co-workers and employees in supervisory positions. Id. at 553. The court held that incidents of a co-workers harassment are not covered by the terms of § 955(e) because "[a] non-supervisory employee who engages in discriminatory conduct cannot be said to 'intend' that his employer fail to respond." Id. (quoting Tyson v. CIGNA Corp., 918 F. Supp. 836, 841 (D.N.J. 1996)).

With respect to this claim, Defendants summarily argue that since Plaintiffs cannot meet the prima facie test for hostile work environment, there can be no liability for "aiding and abetting." Since we have already determined that Plaintiffs provided sufficient evidence to support a hostile work environment claim this argument is of no merit. To the extent that Plaintiffs have brought claims against Defendant's employees who occupied non-supervisory positions, however, the claims must be dismissed. Dici, 91 F.3d at 553. Claims have been brought against Ruckle, Purcell and Bartholomew for participating in the unlawful conduct and failing to assist Plaintiff in her complaints. At the Bloomsburg facility, Bartholomew was the general manager, Purcell was the kitchen manager, and Ruckle was a manager. (Danielle Rielli's

15

Br. in Opp'n to Defs./Third Party Defs.' Mot. for Summ. J. Ex. 5.)  The record shows that Ruckle substantially contributed to the hostile work environment.  And Purcell and Bartholomew failed to take action to prevent further harassment.  Upon informing Purcell about the environment at the Bloomsburg facility, Purcell told Rielli, "You've just got to get over it, Danielle.  You just got to get over it."  (Rielli Dep. at 235-36.)  Upon hearing Plaintiff's concerns that employees were saying that she was a lesbian and a "carpet-muncher," Bartholomew responded, "You must be gay, Danielle.  You're a lesbian."  (Id. at 229.)

Aider and abetter liability has been alleged against Volpe and Marks for their role in her retaliatory termination.  Marks served as the "Area Director" in charge of the Audubon facility, and Volpe is the "Company Director of Training".  Marks and Volpe terminated Plaintiff's employment.  During this conversation, Rielli asked Volpe if the meeting had something to do with her complaints about the incidents at Bloomsburg, to which Marks responded, "[y]ou ran your mouth about everybody."  (Id. at 268-69.)  Each of the individual Defendants is in a supervisory position.  Plaintiff has provided facts that support a finding of aider and abetter liability as to each of the individual defendants.

    **D.**    **Damages**

Defendant contends that Rielli's right to compensatory and punitive damages should be limited.  Defendant argues that Rielli has no economic damages because she was able to obtain employment at a higher salary after her termination.  "Following the 1991 amendments to Title VII, the [plaintiff] has authority to bring suit to enjoin an employer from engaging in unlawful employment practices, and to pursue reinstatement, backpay, and compensatory or punitive damages, in both Title VII and ADA actions."  E.E.O.C. v. Waffle House, Inc., 534 U.S. 279,

280 (2002); see also Faragher v. City of Boca Raton, 524 U.S. 775, 804 (1998) ("With the amendments enacted by the Civil Rights Act of 1991, Congress both expanded the monetary relief available under Title VII to include compensatory and punitive damages.") (citing 42 U.S.C. § 1981a)). At this time Defendant has not sufficiently addressed why Rielli's compensatory damages should be limited. Defendant argue that Plaintiffs cannot meet the legal standard for punitive damages. Pursuant to 42 U.S.C.A. § 1981, "[a] complaining party may recover punitive damages ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.A. § 1981a(b)(1). From the facts already recited in this memorandum, it is apparent that there is an issue of fact as to whether Rielli may recover punitive damages. At this point, it would be improper to take this issue of damages away from the ultimate trier of fact.[11]

### E. Intentional Infliction of Emotional Distress

Under Pennsylvania law, to prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe. Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997) (citing Hooten v. Penna. College of Optometry, 601 F.Supp. 1151, 1155 (E.D. Pa. 1984)). As herein above discussed, the conduct to which Rielli was subjected is sufficient for a jury to find that it was "extreme and

---

[11]Defendant also argues that "Rielli is not entitled to any windfall or 'double recovery' if she actually prevails." (Def./Third Party Def. Br. in Supp. of the Mot. for Summ. J. at 46.) Both Plaintiff EEOC and Plaintiff/Third Party Rielli ask for injunctive relief and to make Rielli "whole." Plaintiff Rielli will not be awarded "double recovery."

outrageous."[12]

Defendant argues that Rielli has not suffered severe, emotional distress. To this end, Rielli has testified that as a result of the incidents and her termination she has been depressed, and felt humiliated and embarrassed. (Rielli Dep. at 303.) However, Rielli did not visit any physician as a result of these symptoms, nor has she taken any medication. (Id. at 306-07.) Allegations of depression, humiliation and embarrassment, without medical evidence or objective proof as to the seriousness of these ailments, are not sufficient "injuries" to allege a prima facie case of intentional infliction of emotional distress. See Warner v. Montgomery Township, No. Civ. A. 01-3309, 2002 WL 1623774, at *10 (E.D. Pa. Jul. 22, 2002) (dismissing case where plaintiff has not attached any affidavits or medical reports showing that he has competent medical evidence revealing severe emotional distress); Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 995 (Pa. 1987) (holding that existence of the alleged emotional distress must be supported by some objective proof). Under the circumstances, Rielli's evidence does not support a claim of intentional infliction of emotional distress.

### F.     After Acquired Evidence

In McKennon v. Nashville Banner Publishing Co. the Supreme Court considered whether "after acquired evidence of wrongdoing which would have resulted in discharge bars employees from any relief under the ADEA."[13]  513 U.S. 352, 356 (1995). The Court concluded that an action based on employment discrimination can still be brought, but "as a general rule in cases

---

[12]We have omitted and/or simply alluded to some of the more vulgar statements made to/and around Rielli.

[13]The Court in McKennon recognized that "[t]he substantive, antidiscrimination provisions of the ADEA are modeled upon the prohibitions of Title VII." 513 U.S. at 357.

[involving after acquired evidence] neither reinstatement nor front pay is an appropriate remedy." Id. at 361-62. In regards to backpay, the Court held that "[a]n absolute rule barring any recovery of backpay, ..., would undermine [Title VII's] objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from sex discrimination." Id. at 362. In the instant case Defendant learned through depositions that Rielli had improperly: (1) indicated that she received a two-year degree from a community college when she had not completed her classes; (2) stated that she left her job at Houlihan's for a "better opportunity" when she had been fired; and (3) inflated her previous salary. We accept Defendant's contention that had they known of this information the would have terminated Rielli's employment. Pursuant to McKennon, reinstatement and front pay are not available in this case. With respect to backpay, if Defendant proves that it would have terminated the Plaintiff's employment for the reason revealed by the after-acquired evidence, backpay should run from discharge to the time that the wrongdoing was discovered. See Mardell v. Harleysville Life Ins. Co., 65 F.3d 1072, 1073-74 (3d Cir. 1995).

**IV.     Conclusion**

Defendants have made numerous arguments to support their Motion for Summary Judgment. While Defendants urge us that the "totality of the circumstances" merits granting of the motion, Rielli's allegations clearly raise an issue of fact as to the basis of her Title VII and PHRA claims.

An appropriate Order follows.

IN THE DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL OPPORTUNITY | : | |
| EMPLOYMENT COMMISSION | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-7485 |
| | : | |
| ROSE CASUAL DINING, L.P., d/b/a | : | |
| APPLEBEE'S NEIGHBORHOOD | : | |
| GRILL & BAR | : | |
| DANIELLE RIELLI | : | |
| | : | |
| v. | : | |
| | : | |
| ROSE CASUAL DINING, L.P., JAMIE | : | |
| RUCKLE, SUSAN PURCELL, STACEY | : | |
| BARTHOLOMEW, DEXTER VOLPE, and | : | |
| BRIAN MARKS | : | |

**<u>ORDER</u>**

AND NOW, this 5th day March 2004, upon Defendants' Motion for Summary Judgment (Doc. No. 27), all documents in support thereof, and in opposition thereto, it is hereby ORDERED that:

1. Defendants' Motion is GRANTED with respect to Plaintiff Rielli's claim for intentional infliction of emotional distress;

2. Defendants' Motion is GRANTED with respect to Plaintiff Rielli and Plaintiff EEOC's demand that Rielli be reinstated and given "front pay"; and

3. Defendants' Motion is DENIED in all other respects.

IT IS SO ORDERED.                                    BY THE COURT:


_____
R. Barclay Surrick, Judge